# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KENNY LEE MCCASKILL,        :
                                    :
     Plaintiff,             :        No. 3:18-CV-1777 (VLB)
                                    :
     v.                   :
                                    :        March 23, 2020
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER OF SOCIAL     :
SECURITY,                 :
                                    :
     Defendant.           :

## MEMORANDUM OF DECISION DENYING MOTION TO REVERSE THE DECISION OF THE COMMISSIONER, [ECF NO. 16], AND GRANTING MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER, [ECF NO. 19]

Before the Court is an administrative appeal filed by Plaintiff Kenny Lee McCaskill ("Claimant") pursuant to 42 U.S.C. § 405(g) following the denial of his application for Title II Social Security Disability and Title XVI Supplemental Security Income benefits.[1] Claimant moves for an order reversing the decision of the Commissioner of the Social Security Administration ("Commissioner") and remanding the case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on the basis that

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). 20 C.F.R. §§ 404.929 *et seq.* Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. 20 C.F.R. §§ 404.967 *et seq.* If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") Alexander Peter Borré committed several errors in evaluating Claimant's evidence of disability, which caused the ALJ to improperly deny Claimant disability benefits. *See* [ECF No. 18 (Mem. in Supp. of Mot. to Reverse the Decision of the Comm'r)]. The Commissioner opposes this motion. [ECF No. 19 (Mem. in Supp. of Mot. to Affirm the Decision of the Comm'r)]. Claimant has filed a Reply Brief in support of his Motion to Reverse. [ECF No. 20 (Reply Br.)]. For the following reasons, Claimant's motion to reverse is DENIED, and Commissioner's Motion for an Order Affirming the Commissioner's Decision is GRANTED.

## I.     Background

Claimant filed a Statement of Material Facts containing a review of the procedural history and facts from the Administrative Record. [ECF No. 17]. The Commissioner largely agrees with Claimant's statement of facts but clarified or added facts in his Memorandum in Support of his Motion to Affirm where the Commissioner saw fit to do so. [ECF No. 19-1 at 2-7]. The Court has reviewed the evidence and adopts the Parties' respective statements of facts, hereby incorporating them into this opinion.

Claimant was born on October 19, 1968 and alleges his disability began on December 31, 2010 when he was 42 years old. (R. 519-36) (noting that Claimant's "alleged onset date" is December 31, 2010). On February 9, 2012, Claimant applied for SSDI benefits, and on February 28, 2012 he applied for SSI benefits. (R. 863-78). Claimant's applications were denied initially on May 29, 2012, (R. 527, 536), and upon reconsideration on August 29, 2012. (R. 548, 558).

Claimant attended a hearing before ALJ William J. Dolan on January 16, 2014, (R. 503-18), who issued an unfavorable decision on January 27, 2014. (R. 561-81). On May 16, 2014, Claimant requested review of the ALJ's decision, (R. 1017-18), and on April 23, 2015, the Appeals Council remanded the claim for further administrative proceedings.[2] (R. 582-86).

Claimant attended a second hearing before ALJ Alexander P. Borré on January 7, 2016, (R. 464-502), who issued an unfavorable decision on April 13, 2016. (R. 587-613). On June 29, 2016, Claimant requested review of the decision, (R. 1058-59), and on August 30, 2017, the Appeals Council again remanded the case for further administrative proceedings.[3] (R. 614-18).

Claimant had a third and final hearing on January 11, 2018 before Judge Borré. (R. 53-83). ALJ Borré issued another unfavorable decision on March 6, 2018. (R. 20-52). On April 9, 2018, Claimant filed a request for review of the decision, (R. 18-19, 862), which was denied by the Appeals Council on August 28, 2018, rendering ALJ Borré's decision final. (R. 1-6).

## A.    Relevant Medical History

The medical record reflects that Claimant suffers from, *inter alia*, depression, back pain, and a history of alcohol and opioid dependence, which is now

---

[2] The Appeals Council faulted the ALJ for affording Claimant's treating physician's opinion "great weight," but seemingly ignoring her opinion that Claimant would be absent from work two or three times per month due to his impairments, and because the ALJ did not discuss the opinions of several non-examining sources. (R. 583-84).

[3] The Appeals Council faulted the ALJ for not allowing a supplemental hearing when the vocational expert submitted post-hearing information and Claimant requested a supplemental hearing, which the regulations mandate unless the ALJ has already decided to issue a fully favorable decision. (R. 616-17).

apparently in remission. The Court will address Claimant's medical history only as it relates to issues raised by the parties.

### B.    Claimant's Hearing Testimony

At the January 11, 2018 hearing Claimant testified that he lived with his girlfriend, who worked part-time. (R. 61). Claimant had not had a driver's license for seven years and used a medical cab to go to doctor's appointments. (R. 62). His daily activities consisted of personal hygiene and watching television. (R. 72). He sometimes had difficulty with dressing because he would lose his balance. (R. 75). Claimant did not do the shopping; his girlfriend went to the grocery store. (R. 62). His girlfriend also prepared meals and did the laundry. (R. 71-72). Claimant stated that he did not use a smart phone because he did not know how to read and write. (R. 70). He could not read a newspaper article. (R. 73). He had behavioral problems and was "pass[ed]" along in school and did not learn to read and write. (R. 63, 73).

Claimant testified that from 2005 to 2011 he worked as a residential and commercial furniture mover, and routinely lifted more than 50 pounds. (R. 63-64).

Claimant had to stand up and sit down during the hearing due to his back pain. (R. 59, 62, 74). He claimed to use a cane "most of the time," but he did not have it with him because he forgot it. (R. 67). He could walk approximately a half block before needing to rest due to back pain and his right leg which often gave out. (R. 69). Claimant had not undergone back surgery because he was told the likelihood of improvement was only a "50-50 chance." (R. 68). Claimant stated that

he had difficulty with recalling information, getting along with other people, and remembering what word to use while talking. (R. 74).

### C. Vocational Expert's Testimony

Howard Steinberg testified at the hearing as a vocational expert. (R. 76-82). The vocational expert testified that Claimant's past relevant work as a furniture mover is performed nationally at the semi-skilled, very heavy exertional level. (R. 77).

The vocational expert testified that a hypothetical person with the residual functional capacity to perform work at "the light level except th[at] individual could not climb ladders, ropes, or scaffolds, or tolerate exposure to hazards such as open moving machinery or unprotected heights, the individual could occasionally climb ramps and stairs, occasionally stoop, kneel, crouch and crawl, and was further limited to simple and repetitive tasks in an environment that did not call for public interaction and only occasional interaction with coworkers and supervisors," could not perform Claimant's past relevant work of furniture mover. (R. 77).

The vocational expert testified that such a hypothetical individual could perform other jobs, such as hotel housekeeper, office helper, or mail clerk. (R. 77-78).

The vocational expert also testified that this hypothetical individual, theoretically limited further to needing a cane for "ambulating distances of 100 feet or greater" and requiring "a sit-stand option," meaning that he needs to "change positions from sitting to standing or standing to sitting for 2 to 3 minutes every 45

minutes," would not be able to perform the work of a hotel housekeeper, but could still be an office helper or a mail clerk. (R. 78-79).

The vocational expert testified that if the hypothetical individual was limited further to being "sedentary," he could still do work as a surveillance system monitor." (R. 79-80).

The vocational expert testified that all work would be precluded for someone who was expected to be off task for more than 15% of the workday or out of work two times per month. (R. 80). The same would be true, the vocational expert testified, for an individual who could sit for two hours, stand for two hours, and walk for two hours in an eight-hour workday. (R. 81).

### D. The ALJ's Decision

ALJ Borré made several findings in his decision on March 6, 2018 which are subject to review by this Court. ALJ Borré determined that Claimant has not engaged in substantial gainful activity since December 31, 2010, the alleged onset date. (R. 26). He found that the Claimant suffers from the following severe impairments: lumbar/spine degenerative disc disease, major depressive disorder, and alcohol and heroin dependence (in remission). *Id.* ALJ Borré found that these impairments "significantly limit [Claimant's] ability to perform basic work activities." *Id.*

ALJ Borré concluded that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* ALJ Borré also concluded that "[t]he severity of the claimant's mental impairments,

considered singly and in combination, do not meet or medically equal the criteria of listing 12.04," which would satisfy the "paragraph B" criteria. (R. 27). This was because such listings require one extreme or two "marked" limitations in broad areas of mental functioning, but Claimant had only four moderate, and no marked or extreme, limitations. *Id.* Claimant's moderate limitations were in the areas of:

- "understanding, remembering or applying information";
- "interacting with others";
- "concentrating, persisting, or maintaining pace"; and
- "adapting or managing oneself"

(R. 27-28).

ALJ Borré concluded that the "paragraph C" criteria were not met because "the claimant has not experienced repeated episodes of decompensation, each of extended duration, does not have a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in his environment would be predicated to cause him to decompensate, and does not have a history of or current need for a highly supportive living arrangement." (R. 28).

ALJ Borré ruled that the Claimant has a residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds and he must avoid hazards. The claimant can occasionally stoop, kneel, crouch, and crawl. He can perform simple, routine tasks in an environment with no public interaction and only occasional interaction with coworkers and supervisors. The

claimant needs a cane for distances of 100 feet or greater and for uneven surfaces. He needs to be able to switch between sitting and standing for two to three minutes every 45 minutes." (R. 29).

The ALJ considered the various medical treatment and opinion evidence contained in the record as well as Claimant's own testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 19). ALJ Borré so found for the following reasons.

First, as regards Claimant's statements "about the intensity, persistence, and limiting effects of his . . . symptoms, they are inconsistent because while he did have certain symptoms associated with lumbar spine degenerative disc disease, major depressive disorder, alcohol and heroin dependence (in remission), the claimant showed stability in his condition through treatment with his treating physicians." (R. 35 (citing R. 1321-95, 1446-532, 1676-730, 1736-901, 1962, 1975-2003, 2037-47, 2063-139)). "The claimant was consistently alert, fully oriented, cooperative, well nourished, well developed, normal-appearing, and in no acute distress." *Id.* (citing R. 1321-95, 1446-532, 1676-730, 1736-859, 1975-85, 1996-2003, 2063-139). "His motor activity, mood, affect, perceptions, thought content, thought process, memory, insight, and judgment were consistently normal." *Id.* (citing R. 1446-532, 1676-730, 1736-854, 1860-901, 2063-139).

ALJ Borré also noted that over time Claimant's depression symptoms seemed to improve. For example, in 2010 and 2011, Claimant "reported that he was doing well on his psychiatric medication," and that "his depression worsened when he was not on his medication." *Id.* In October 2013, Claimant "reported improvement in his depressive symptoms," in January 2017 "his depression was considered mild," and in January of 2018 he "denied any depressive symptoms." (R. 36).

ALJ Borré noted Claimant's symptoms of back pain also improved over time. For example, in December 2010 his "back pain had improved and he was approved to go back to work," in May 2012 "he had no back tenderness on physical examination, normal range of motion, and his straight leg raise was negative," an MRI in February 2014 "showed only mild to moderate stenosis," in November 2015 his back pain showed some improvement through physical therapy, in January 2017 Claimant "denied being in any pain," and in September 2017 Claimant's "neck, extremities, and neurological system were all normal." *Id.*

> Furthermore, the claimant's activities of daily living demonstrate that he has been able to function normally, despite his alleged impairments. The claimant testified that he lives with his girlfriend and that he is able to take a medical cab for appointments and use public transportation. He testified that he has not had a driver's license in the past seven years. The claimant testified that during a typical day, he brushes his teeth, washes his face, and watches television. He can shop in stores and can pay bills, count change, handle a savings account, and use a checkbook/money orders . . . . The claimant can prepare his own meals on a daily basis.

*Id.*

In sum, ALJ Borré found that "the above residual functional capacity assessment is supported by medical findings of lumbar spine degenerative disc

disease, major depressive disorder, alcohol and heroine dependence (in remission), but grossly intact cognition and improved symptoms with medication compliance and therapy; and treatment and progress notes that reflect the claimant's symptoms and how they have improved through treatment. The residual functional capacity is also supported by the claimant's wide range of daily activities." (R. 39).

After making the RFC determination, ALJ Borré found that Claimant would be unable to perform any past relevant work as a residential or commercial furniture mover, because "the claimant is limited to light work." *Id.*

ALJ Borré found that Claimant's limitation to "light work" would normally result in a finding of "not disabled," but Claimant had "additional limitations." (R. 40). This required the help of the vocational expert, who testified that even with these additional limitations, Claimant could perform work as an office helper or mail clerk. *Id.*

Based on this testimony, ALJ Borré found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." *Id.* In sum, ALJ Borré held that "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on February 9, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act," and that "[b]ased on the application for supplemental security income filed on February 28,

2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act."

## II.    Legal Standard

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.§ 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'") (quoting 42 U.S.C. § 405(g)).  Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position*. Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

Thus, "[i]n reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial

evidence in the record and were based on a correct legal standard." *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Biestek*, 139 S. Ct. at 1154 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citations omitted). "[A district court] must 'consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403–04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)).

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). An

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment must be one which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner:

1. First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity ["Step One"].

2. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities ["Step Two"].

3. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ["Step Three"].  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.

4. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the Residual Functional Capacity ("RFC") to perform his past work ["Step Four"].

5. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform ["Step Five"].

20 C.F.R. § 404.1520.

A claimant's residual functional capacity ("RFC") is determined by the ALJ's assessment of the claimant's capacity to work, taking into consideration the extent to which the claimant's impairment(s) and related symptoms limit what the claimant can do in a work setting. 20 C.F.R. §§ 404.1545; 404.1546.  A claimant's

RFC is "what an individual can still do despite his or her limitations." SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."[4] SSR 96–8p, 1996 WL 374184, at *2.

"A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (defining RFC as "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continued basis") (quoting SSR 96–8p, 1996 WL 374184, at *1).

RFC is  a comprehensive "assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." 20 C.F.R. § 220.120(a). An ALJ must consider both a claimant's severe impairments and non-severe impairments in determining his/her RFC. 20 C.F.R. §

---

[4] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (internal quotation marks omitted).

416.945(a)(2); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984).

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). While the claimant has the general burden of proving his or her disability within the meaning of the Act, at Step Five, the burden shifts to the Commissioner to show that there is other work that the claimant can perform. *McIntyre*, 758 F.3d at 150 (citing *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam)).

### III.    The Parties' Arguments

Claimant moves for reversal or remand on four grounds.

First, Claimant states that ALJ Borré failed to properly weigh the medical opinion evidence, which led ALJ Borré to adopt an "RFC assessment [that wa]s not based on substantial evidence." Claimant's Memorandum of Law in Support of Motion to Reverse Decision of Commissioner ("Cl.'s Memo."), [ECF No. 18 at 2-12]. The Commissioner argues that the ALJ's RFC assessment was supported by substantial evidence because (i) "the ALJ carefully considered the entire record," (ii) he "properly exercised his discretion in resolving the evidentiary conflicts in the record," and (iii) he "properly articulated his rationale for" giving limited weight to Claimant's treating physician's opinions. Commissioner's Memorandum of Law in Support of Motion to Affirm ("Commissioner's Memo."), [ECF No. 19-1 at 7-17].

Claimant replies that the Commissioner's argument regarding the ALJ properly giving limited weight to treating physicians' opinions due to those physicians use of a check-box type opinion form is an improper "*post hoc*" rationalization, as the ALJ took no issue with the use of those forms.   Claimant's Reply Brief ("Reply Brief"), [ECF No. 20 at 1-3].   Moreover, Claimant argues, there was a great deal of medical provider evidence supporting the opinions on the check-box forms the providers used, much of it showing Claimant to be quite limited.  *Id.* at 3-7.

Second, Claimant argues that the ALJ erred at Step Three in failing to consider whether Claimant's condition met or equaled Medical Listing 12.05.  Cl.'s Memo. at 12-14.   Medical Listing 12.05 includes individuals with significant subaverage intellectual functioning.   The Commissioner counters that the ALJ correctly determined that Claimant's impairments did not meet or equal Listing 12.05 due to deficits in adaptive functioning because "[t]he record does not establish significant adaptive function deficits" and even though the ALJ did not mention Listing 12.05 in his opinion, remand is not required because "the ALJ's rationale" in this regard "can be gleaned from the [ALJ's] decision as he specifically discussed [Claimant's] daily functioning."  Commissioner's Memo. at 17-21.  Claimant replies that the Commissioner improperly substitutes his opinion regarding Claimant's impairments, another "*post hoc*" rationalization, rather than addressing the ALJ's deficient opinion, which requires remand for further analysis.  Reply Brief at 7-8.

Third, Claimant argues that the ALJ failed to properly evaluate Claimant's subjective symptom testimony.  Cl.'s Memo. at 14-16.  The Commissioner argues

that substantial evidence supports the ALJ's finding that Claimant's "subjective complaints regarding the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical and other evidence." Commissioner's Memo. at 21-25.  Claimant replies that substantial evidence did not support the ALJ's treatment of Claimant's subjective symptom testimony because Claimant's "cyclical" mental impairment history, showing highs and lows, supported Claimant's testimony, which the ALJ did not properly characterize in finding that Claimant was "able to function normally," Reply Brief at 9 (citing (R. 36 ALJ Decision)).  This was improper in light of Claimant's testimony showing he had a "limited range of activities."  Reply Brief at 9.

Fourth, and finally, Claimant argues that the ALJ failed to meet his Step Five burden to show Claimant was capable of other work because (i) the ALJ failed to recognize Claimant's illiteracy, which was inconsistent with working as an office helper or mail clerk, Cl.'s Memo. at 16-19, and because (ii) the vocational expert did not provide any source or basis for his testimony regarding no reduction of the number of other jobs available considering Claimant's "additional limitations."  *Id.* at 19-20.  The Commissioner argues that the ALJ's Step Five determination was supported by substantial evidence because (i) "the record does not establish that [Claimant] was illiterate," and because (ii) the vocational expert "testified that the job figures that he provided in response to the ALJ's hypotheticals were consistent with Dictionary of Occupational Titles," and Claimant's counsel failed to cross-examine him on this topic, despite having the opportunity to do so. Commissioner's Memo. at 25-28.  Claimant replies that the ALJ provided no

analysis of Claimant's literacy, so the commissioner's arguments are once again "*[p]ost hoc*" rationalizations that "must be rejected." Reply Brief at 9-10. Claimant also replies that the Dictionary of Occupational Titles does not address the *number* of jobs available, and the Commissioner failed to address that part of Claimant's argument regarding the ALJ's allegedly faulty Step Five analysis. *Id.* at 10.

## IV.     Analysis

### A.     Evaluation of Opinion Evidence

The ALJ must consider "all the relevant medical and other evidence" when determining the RFC. 20 C.F.R. § 404.1545(a)(3). The ALJ will "always consider the medical opinions in [the] case record together with the rest of the relevant evidence." *Id.* § 404.1527(b). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* § 404.1527(a)(1).

Medical opinions of examining sources are generally given more weight than medical opinions of sources who have not examined the claimant. *Id.* § 404.1527(c)(1); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Medical opinions from treating sources are given controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not "inconsistent with the other substantial evidence" in the case record. *Id.* § 404.1527(c)(2).

Dr. Volpe, Claimant's long-standing treating physician, submitted five medical opinions. (R. 1239-43, 1305, 1626-33, 1731-35, 1954-61). She found that

Claimant had serious problems with frustration, an obvious problem with complex instructions, and otherwise slight to moderate limitations. (R. 1241-42). On July 26, 2013 Dr. Volpe opined that Claimant's GAF scores ranged from 50 to 53, indicating moderate limitations, and that he would be absent from work one day per month, (R. 1954-61), but in December 2013 she opined that Claimant's GAF scores were 45 to 48, indicating moderate to marked limitations, and that he would be absent from work two to three times per month. (R. 1626-33).

The Court agrees with the Commissioner that "the ALJ properly articulated his rationale for giving partial weight to the assessments from Dr. Volpe." [ECF No. 19-1 at 8]. As the Commissioner points out, "Dr. Volpe's opinions were submitted on checkbox forms, with little to no narrative explanation for the severe restrictions assessed." *Id.* at 10. The Second Circuit has noted that "[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004); *Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (ALJ properly afforded limited weight to treating source who provided a check-box form, but no narrative).

More importantly, Dr. Volpe repeatedly and consistently noted in her treatment records that Claimant presented with "full orientation, normal motor activity, cooperative attitude, normal speech, appropriate affect, no evidence of psychosis, relevant thought content and coherent thought process, and fair to intact memory insight and judgment." [ECF No. 19-1 at 9 (citing treatment records so finding)]. She also repeatedly noted that Claimant actively participated in group

therapy and accepted feedback, socialized with friends, lived with his girlfriend, described his brother as a "real friend," and attended church. (R. 1723). Consequently, the Court finds that while Dr. Volpe only used the checkbox form the entirety of the treating physician record was sufficiently developed that use of the form did not trigger the ALJ's duty to develop the record.

Based on her treatment records, it was appropriate for the ALJ to only give Dr. Volpe's opinions limited weight when they contradicted her own treatment records, and the ALJ also appropriately limited Claimant's social activities in the RFC to no more than occasional interaction with coworkers and supervisors, thus adequately accounting for any limitations in this area.

Claimant argues that the ALJ's decision to give the mental health opinions of Ms. Camerota and Dr. Madonick little weight as inconsistent with the medical evidence was error because they supported their opinions with reference to numerous symptoms "that undergirded their opinions." [ECF No. 18 at 8]. However, those references were merely check marks in preprinted questionnaire forms, with little to no explanation nor any citation to underlying medical treatment findings. *Halloran*, 362 F.3d at 31 n.2 ("[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record."). It is true that the ALJ did not discuss the nature of the form used, simply noting that they were "questionnaires," but he did compare and contrast this opinion evidence with the more detailed medical treatment records, with which the questionnaires were inconsistent. In light of this, the Court finds the ALJ's decision in this regard supported by substantial evidence.

Claimant argues further that the ALJ's decision to give the impairment questionnaire of Dr. Kryspin little weight was error because he failed to focus on Dr. Kryspin's opinion regarding Claimant's "functional limitations in sitting, standing and walking," and instead focused on examination findings that Claimant was "alert, fully oriented, cooperative, well nourished," and "well developed." But that does not tell the whole story. The ALJ noted that Dr. Kryspin found in January 2017 that Claimant "denied being in any pain" and had only "mild" depression, and found in September 2017 that Claimant's "neck, extremities, and neurological system were all normal." Again, the questionnaire used was inconsistent with the medical treatment history. In light of this, the Court finds that the ALJ's decision as regards Dr. Kryspin is supported by substantial evidence.

Finally, Claimant argues that the ALJ ignored the Treating Physician Rule by failing to consider the required regulatory factors, such as Dr. Volpe's long history with Claimant. [ECF No. 18 at 10-11]. The Commissioner argues that "the ALJ was not required to explicitly consider each regulatory factor in the hearing decision," citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013), which declined to require "slavish recitation of each and every factor, where the ALJ's reasoning and adherence to the regulation are clear." Here, the Commissioner continues, the ALJ's reasoning was clear because of the amount of time the ALJ spent discussing Dr. Volpe's treatment records and opinions as well as those of other treaters. The Court agrees with the Commissioner and finds that the ALJ did not ignore the Treating Physician Rule; it is clear from his decision that the ALJ did respect and employ the appropriate regulatory factors.

In sum, as to Claimant's first argument regarding the ALJ's treatment of medical opinion evidence, the Court holds that the ALJ's decision in this regard is supported by substantial evidence.

B.     Claimant's Impairments and Listing 12.05

Claimant's argument that the ALJ's failure to explicitly discuss Medical Listing 12.05 warrants reversal is unavailing, given the overlap between listing 12.04, which the ALJ did explicitly discuss, and 12.05.   Listing 12.04, entitled "Depressive, Bipolar and Related Disorders," and Listing 12.05, entitled "Intellectual Disorder," share the identical paragraph B criteria.   Specifically, 20 C.F.R. Part 404, Subpart P ("Determining Disability and Blindness"), Appendix 1 ("Listing of Impairments"), states that for the paragraph B criteria to be met for *either* Listing 12.04 and 12.05, Claimant must have an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself."

Claimant is correct that Listing 12.05 also requires a subpar IQ score, but that requirement is *in addition to* the requirement for the above extreme or marked limitations; i.e. both must be found.   In other words, because the ALJ determined that Claimant did not have one extreme or two marked limitations in the above areas, it was irrelevant that he failed to discuss Claimant's IQ because neither Listing 12.04 *nor* 12.05 paragraph B were satisfied.   As a result, the ALJ's treatment of Listing 12.05 can be gleaned from his analysis of Listing 12.04, and his analysis in that regard was supported by sufficient evidence.   *See Clark v. Colvin*, No. 6:12-

cv-1507 (DNH/ATB), 2013 U.S. Dist. LEXIS 179070, at *20-33 (N.D.N.Y. Dec. 18, 2013) (similarity of analysis between Listing 12.04 and 12.05 meant court could "glean the ALJ's rationale from her analysis'), *aff'd*, 2013 U.S. Dist. LEXIS 178219 (N.D.N.Y. Dec. 18, 2013).

In sum, as to Claimant's second argument regarding the ALJ's treatment of Listing 12.05, the Court holds that the ALJ's decision in this regard can be gleaned from his analysis and is therefore supported by substantial evidence. Remand is not required.

C.     The ALJ's Failure to Properly Evaluate Claimant's Subjective Symptom Testimony

Claimant argues that the ALJ erred in his finding that Claimant's alleged "intensity and persistence of his symptoms" were not consistent with the medical evidence, for two reasons. [ECF No. 18 at 14-16]. First, Claimant argues that the ALJ failed to consider Claimant's past opioid addiction, which prevents him from taking painkillers adequate to reduce his back pain to an acceptable level. *Id.* Second, the ALJ erred in overstating the daily activities that Claimant could adequately accomplish; Claimant's limitations in this area means he should have been found disabled.

The Commissioner counters first that Claimant's past opioid addiction did not *prevent* him from taking pain medication; in fact, the treatment note cited stated that Claimant's *preference* was to refrain from taking pain medication, and, after that time, Claimant's pain level did decrease, with a "normal" September 2017 examination of Claimant's neck, extremities, and neurological system. [ECF No. 19-1 at 23-24].

Second, the Commissioner argues that the ALJ's finding that Claimant's allegations regarding his symptoms were inconsistent with the medical evidence was proper, not because it indicated Claimant was not disabled, but rather because it indicated that Claimant's "mental and physical capabilities were greater than he alleged." *Id.* at 23 (citing *Selimaj v. Berryhill*, No. 17-cv-3389, 2019 WL 1417050, at *9 (S.D.N.Y. Mar. 29. 2019)).

The Court agrees with the Commissioner that sufficient medical evidence supported the ALJ's finding that Claimant's symptoms showed improvement over time, even without resort to strong pain medication, and that Claimant's mental and physical capabilities were greater than he alleged. The September 2017 examination was properly considered, as was the other medical evidence, which consistently showed that Claimant's motor activity, mood, affect, perceptions, thought content, thought processes, memory, insight, and judgment were normal. Certainly, Claimant's health history was "cyclical," showing ups and downs over time, but it also showed overall a gradual improvement.

In sum, the ALJ's finding that Claimant's alleged "intensity and persistence of his symptoms" were not consistent with the medical evidence was supported by sufficient evidence.

D. **The ALJ's Failure to Meet his Step Five Burden Regarding "Other Work"**

Claimant argues that the ALJ failed to meet his Step Five burden of finding Claimant was qualified to perform "other work" because (1) the ALJ's hypotheticals did not include a functional limitation of illiteracy, which would have been appropriate given Claimant's testimony that he could not read or write, Cl.'s Memo.

at 16-19, and (2) the ALJ failed to ask the vocational expert for the source of his answer regarding the number of jobs for Claimant's "other work." *Id.*

The weight given to Claimant's testimony that he could not read or write was supported by the record. The Commissioner cites several examples from the record where Claimant hand wrote answers to questionnaires, which shows that Claimant is not illiterate, and the vocational expert based his "other work" answers on his professional experience, which is an acceptable source for his answers. Commissioner's Memo. at 25-28 (citing *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014)). The Court finds that Claimant's hand-written answers to his disability questionnaires show that the ALJ did not err in not finding that he was illiterate. The questions are fairly complex, and Claimant's hand-written answers show that he has at least some facility with reading and writing. *See, e.g.* (R. 947 (Q. "Have you ever been in a treatment program for drinking (i.e. alcohol rehab) or drug abuse (i.e. methadone maintenance)? If so, when and where? [handwritten answer:] Blue Hills Rehab on Blue Hills Ave. Hartford Conn.")).

In addition, the Court disagrees that the ALJ did not ask the vocational expert about his source for Claimant's "other work." First, the ALJ asked the vocational expert to "let me know if your testimony in any manner differs from the Dictionary of Occupational Titles," which the vocational expert agreed to do. (R. 77). As to Claimant's "other work," and no reduction in the number of such jobs, the ALJ stated that "I know that the Dictionary of Occupational Titles doesn't contemplate somebody [i.e. Claimant] sitting and standing like that. Nor does it contemplate the use of a cane. Can you tell me what that portion of your testimony is based

on?" (R. 79). The vocational expert responded, "my experience as a vocational rehabilitation counselor." *Id.* The ALJ pressed further, "[s]o, you've seen these jobs performed and performed a jobs analysis?" *Id.* The vocational expert's answer? "Yes." *Id.* Under these circumstances, the ALJ was well within his discretion to credit the vocational expert's testimony. *McIntyre*, 758 F.3d at 152 ("the ALJ reasonably credited this testimony, which was given on the basis of the [vocational] expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record.").

In sum, the ALJ's Step Five analysis regarding "other work" was supported by substantial evidence.

### V.    Conclusion

For the foregoing reasons, Claimant's Motion for Order Reversing the Decision of the Commissioner is DENIED, and the Commissioner's Motion for Order Affirming the Commissioner's Decision is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: March 23, 2020.